HINKLEY & EGERY IRON COMPANY, petitioners, *vs.* MAINE MUTUAL MARINE INSURANCE COMPANY.

Penobscot, 1876.—December 21, 1876.

The petitioners gave their note of $1001, to a mutual insurance company having no capital stock, "for the better security of those concerned," and received at the same time an open policy agreeing to furnish and provide insurance for the petitioners to the amount of $1000, in premiums. The insurance

company, without furnishing such insurance or being requested so to do became insolvent, and turned over to receivers their effects including the note which was paid by the petitioners in accordance with the judgment of this court after an unsuccessful defense on the ground of failure of consideration. *Held,* that the petitioners had no claim against the insurance company for reimbursement on account of the note or of failure to provide insurance.

On report.

Petition for extension of time within which to present and prove claims before the receivers of the defendant company, containing a statement in substance as follows : the petitioners represent that January 2, 1871 they gave a promissory note for $1001, payable in twelve months from date to the order of the Maine Mutual Marine Insurance Company; that the company having become insolvent and receivers appointed, the note, payment having been refused, was placed in suit by the receivers ; that the receivers claimed that the note was given under section 9 of the charter of the Maine Mutual Marine Insurance Company, "for the better security of those concerned," while your petitioners contended that it was given for an open policy in the ordinary course of business, and hence that they could only be held to pay upon the note, the premiums actually due for insurance effected under the policy ; that the opinion of the court in the case as reported in 64 Maine, 93, sustained the position taken by the receivers, and the petitioners were defaulted for the amount of the note, and have since satisfied the execution issued upon the judgment recovered.

Your petitioners now claim that when they gave the note they received therefor an open policy from the insurance company, and that by the policy the company agreed to furnish and provide insurance for the petitioners to the amount of one thousand dollars in premiums, but that on account of insolvency, they have become unable to perform their agreement, so that your petitioners have now a just claim against the company for the amount paid on the judgment.

The counsel agreed that if the court should be of opinion that the claim of the petitioners should be allowed, the time for presenting claims should be extended so that the claim might be presented to the receivers. The charter of the company, the note

given by the petitioners, and the open policy issued to them by the insurance company, and any records of the insurance company made part of the case.

The questions arising under the petition and the agreement of counsel were submitted to the full court for determination.

*W. H. McCrillis,* with whom were *F. A. Wilson* and *C. F. Woodard,* for the petitioners, in the course of his argument interpreted the contract as follows:

This contract, composed of the advance premium note and open policy, with the ninth section, constitute one contract, and the parts are to be interpreted together as one contract, and together with the meaning of an advance premium note would read: "Bangor, January 2, 1871. Twelve months from date the Hinckley & Egery Iron Company, promise to pay to the Maine Mutual Marine Insurance Company, one thousand and one dollars, payable at Bangor, Maine, value received." It is agreed between the iron company and the insurance company, that this is a "premium note in advance" given for "better security of those concerned," and the note is conditional, and nothing is due or to be paid on the note but earned premiums; but the insurance company, in the course of its business, may negotiate the note to obtain money to pay claims or otherwise; and the iron company will pay the note to the indorsee; and a compensation may be allowed the iron company not exceeding six per cent per annum; and the insurance company agree, if the iron company so elect, that they will earn premiums for them to the amount of the note; and in case the insurance company sell and transfer the note, the insurance company will reimburse the iron company by earned premiums.

*C. P. Stetson,* with whom was *A. W. Paine,* for the defendants.

DICKERSON, J. The petitioners pray for leave to prove their claim against the defendant company, arising from a judgment rendered against them in behalf of said company upon a note of $1001, dated January 2, 1871. They allege that they have paid said judgment, and thus state their ground for reimbursement: "when they gave said note they received therefor an open policy from the Maine Mutual Marine Insurance Company, and by said

policy said company agreed to furnish and provide insurance for the petitioners to the amount of one thousand dollars in premiums, but that on account of the insolvency of said company it has become unable to perform its agreement, so that your petitioners now have a just claim against said company for the amount paid by them as aforesaid on said judgment."

The petitioners occupy the somewhat anomalous position of an unsuccessful litigant seeking to recover back of the successful one the amount he has paid upon the judgment recovered against him. The parties having agreed that, if the court shall be of opinion that the claim should be allowed, the time for presenting claims may be extended, the only question to be determined by the court is whether the claim is allowable.

This question was substantially and definitively settled in the action upon the very note on which the judgment sought to be allowed was rendered, viz: *Howard et als., receivers,* v. *The Hinkley & Egery Iron Co.,* 64 Maine, 93, and in *same* v. *Palmer et al.,* 64 Maine, 89, which is made a part of that case.

It was decided in those cases :

I.   That the notes of that class were given under § 9 of the charter of the defendant company.

II.   That they were founded on sufficient consideration.

III.   That they constitute or stand for the capital stock of the company.

IV.   That they are enforceable in the hands of the receivers to pay losses.   And,

V.   That it is no defense to such notes that no insurance has been effected under the open policies for which the notes in question were given, nor that the company has become insolvent.

The claim of the petitioners is not materially distinguishable from that set up in defense of these actions.   The exhaustive arguments of the learned counsel for the petitioners in this case are in fact but re-arguments of those cases.   If the principles of these decisions are to be maintained, it is clear that the prayer of the petitioners must be denied; that prayer is irreconcilable with them. If these notes constitute the capital stock of the insurance company, or are a substitute therefor, "for the better security of those concerned," it is not competent for the promisors to withdraw them,

or, if paid, the amount so paid, from the common fund, and thus deprive the holders of unpaid policies, upon which losses have been incurred, of the security the notes were designed to afford. If one promisor may do this, others may ; until the imposing fund of "$50,000" required to be secured by the charter becomes a myth, vanishing at the wand of the sagacious and crafty operator, when the confiding holders of policies with incurred risks approach it for indemnity. In this respect they stand upon the same basis as the premium notes by persons actually insuring in the company under § 7, "which shall not be withdrawn from said company, but shall be liable to all the losses and expenses incurred by the company during the charter."

We do not perceive that the inability of the insurance company, by reason of insolvency, to perform its alleged agreement to insure for the petitioners, changes the legal status of their note or the judgment thereon one iota. If there was any such agreement, it was upon the condition that they should apply for insurance, which they never did. It was optional with them whether to do so or not. Their failure to insure was not the fault of the company, but their own voluntary choice. It is now too late for them to escape the consequences of that election. Nor was their promise to pay the note to the company conditioned upon the continuing solvency of the company. The insolvency of the insurance company was one of the possible, if not probable, contingencies attending the enterprise. The petitioners voluntarily assumed that risk and must abide the consequences. The insolvency of the insurance company is indeed but another reason for preserving its remaining assets from the contemplated spoliation ; the admitted inadequacy of them to pay its indebtedness enhances their relative importance. In no view that we have been able to take of the case does the insolvency of the insurance company afford the petitioners legal ground for the allowance of their claim. To do so would be to overrule the cases cited, and thus to dissipate the common fund designated in the charter and relied upon by policy holders with underwritten risks as the guaranty for their indemnity.

*Petition denied with costs for respondents.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and PETERS, JJ., concurred.